UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-13-GWU

STACY RAINS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

>    Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
>
> 5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist.

Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Stacy Rains, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a degenerative disc disease of the lumbar spine and a depressive disorder. (Tr. 19). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined Mr. Rains retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 25-9). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 40, with a third to seventh grade reading ability and work experience as a backhoe operator and bulldozer operator could perform any jobs if he were capable of light level exertion with the option of sitting or standing at will, and also had the following non-exertional restrictions. (Tr. 558). He: (1) could occasionally bend, stoop, twist, and climb and (2) would have a moderate limitation in understanding and carrying out detailed instructions and responding appropriately to changes in the work setting. (Id.). The VE responded that there were jobs that

such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 558-9).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff does not challenge the physical restrictions given by the ALJ, but asserts that the ALJ committed error in discounting a treating source opinion regarding his mental restrictions. Because the court agrees that the proper procedures were not followed, a remand will be required for additional consideration.

Mr. Rains stopped work due to a back injury in July, 2003 (Tr. 545) and started treatment at a mental health clinic, the Comprehensive Care Center (CCC), in approximately September, 2005, on referral from his attorney, for complaints of depression (Tr. 446, 455). He was evaluated by the staff psychiatrist, Dr. Siddique, on October 31, 2005. Mr. Rains stated that his depression had been worsening, that he felt worthless and that nobody cared about him, that he could not stay asleep at night, that he had lost interest in hobbies, and that he felt life was not worth living. (Tr. 446). Dr. Siddique diagnosed a moderate major mental depressive disorder without psychotic symptoms and assigned a Global Assessment of Functioning (GAF) score of 50 (Tr. 447). A GAF score of 50 reflects serious symptoms or serious impairment in social, occupational, or school functioning. <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text

Revision), p. 34. Dr. Siddique prescribed medications and the plaintiff related some improvement in subsequent sessions, but the physician did not change his diagnosis or provide any new indication of functioning. (Tr. 444-5). Although there is a gap in office notes, the plaintiff testified that he continued to be treated by Dr. Siddique and a counselor at the time of the February 6, 2007 administrative hearing. (Tr. 555).

Dr. Siddique submitted a mental medical assessment form on January 22, 2007, indicating that Mr. Rains had a "seriously limited but not precluded ability" to make all occupational and performance adjustments, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. (Tr. 513-14). The VE testified that if these restrictions were grafted onto the ALJ's hypothetical questions, there would be no jobs the plaintiff could perform. (Tr. 560).

The Sixth Circuit has held that an ALJ is required to "give good reasons" for the weight given a treating physician's opinion. Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004). In the present case, the only specific reason cited by the ALJ for rejecting Dr. Siddique's opinion is that it was inconsistent with an internal assessment made by the same source in October, 2005, which described "slightly low" societal and role functioning and "slightly high" interpersonal functioning, daily living/personal care function, and cognitive/intellectual functioning. (Tr. 27-8). However, it does not appear that this assessment was completed or specifically approved by Dr. Siddique. It is dated October 6, 2005 and signed by a

clinician and social worker at the CCC.  (Tr. 451).  Dr. Siddique's initial evaluation of the plaintiff did not take place until October 31.  (Tr. 446-7).  Apart from the issue of the weight attributable to an assessment completed by a counselor and clinician who are not acceptable medical sources under the Commissioner's regulations at 20 C.F.R. § 404.1513, it is not logical to accuse Dr. Siddique of being inconsistent with an assessment that he did not prepare, even if it was from the same institution.

Elsewhere in the ALJ's decision, he stated that the plaintiff had not received regular treatment at a mental health facility and had stopped treatment with Dr. Siddique in December, 2005 after attending four sessions.  (Tr. 27).  While there are no office notes after December, 2005, the plaintiff did testify, as previously noted, that he was still seeing Dr. Siddique at the time of the February, 2007 hearing. Therefore, the lack of continuing treatment was not an entirely legitimate basis for discounting the psychiatrist's opinion.

The court notes that there are two one-time psychological evaluations of the plaintiff, including a consultative examination by Jeanne M. Bennett in April, 2005. Dr. Bennett diagnosed a pain disorder, assigned a GAF of 50, and stated that the plaintiff would have marked limitations in his ability to tolerate stress and pressure in day-to-day employment.  (Tr. 434-8).[1]

---

[1] The ALJ correctly noted at the hearing that Dr. Bennett referred to Mr. Rains as a female throughout the report, although details such as Social Security number and birthdate were correct.  (Tr. 540-1).  He stated he would attempt to follow up with the state agency to resolve the conflict, but, as the Commissioner concedes in his brief,

08-13  Stacy Rains

The plaintiff also underwent a psychological evaluation by Psychologist Reba Moore, in which the plaintiff was diagnosed with mild mental retardation.  (Tr. 516-20).  The court notes that Ms. Moore appeared to conclude the plaintiff was unable to resume work based, in part, on physical issues outside her expertise.  (Tr. 520).  The ALJ also provided several good reasons for discounting her conclusions regarding the plaintiff's alleged illiteracy and intellectual functioning.  (Tr. 27).  However, this report does not support the mental restrictions in the hypothetical question, either.

The decision will be remanded for further consideration.

This the 12th day of November, 2008.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**

---

apparently did not do so.  A state agency reviewer in December, 2005 commented that there appeared to be a basis for discounting the consultant's opinion, but the reviewer also referred to the plaintiff as "she."  (Tr. 475).  Since the Bennett report is not critical to the outcome of the court's decision, the matter is noted only in passing.  However, the conclusions of the report do not bolster the defendant's case.